Freeman, J.,
delivered the opinion of the court.
This bill is filed by the administrator of Samuel Humbard for a sale of the tract of land mentioned in the bill to pay debts of his intestate. The bill contains the proper allegations as, to the exhaustion of the personal estate, and the necessity for a sale of the land. It then alleges that Samuel Humbard died in possession of a certain tract of land, claiming it as his own; and, describing it, asks that it be sold for payment of the debts remaining unpaid.
The widow and adult heirs answer and make the following defense against said sale: That at the death *138 of Samuel Humbard in November, 1853, he held the tract of land under an agreement in writing between him and his father, Aden Humbard, that Samuel was to support his father and mother, etc., as conditions precedent to the said Aden making him a deed for the same, and refer to a case of Polly Humbard (the widow) et als. v. William Humbard et als., as a case in which a bill was filed in 1855, after the death of Samuel and Aden Humbard, by the heirs of Samuel against the other heirs of Aden Humbard, to get the title vested in the complainants, or to have the specific execution of the agreement. In the same ease the heirs of Aden Humbard filed a cross bill to rescind the contract, as may be inferred from the answer, and as we know from the report of the case in 3 Head, 100, where it will be seen both bills were dismissed, and the parties left to their remedies at law. The answer then states that the title never was confirmed in Samuel in his life-time, nor in his heirs after his death. It seems they had possession under the agreement, perhaps, or it may have been as heirs of Samuel, who was an heir of Aden Humbard. In this state of the title an execution is alleged to have issued from the Supreme Court for the costs of the causes in that court, which was levied on this tract of land as the property of defendants, who the answer says were the heirs of Aden Humbard. Under this levy the land seems to have been sold, and bought by one Sevier, 2d of September, 1861. Respondents say that, desiring to _ retain their old home, they pro-procured Sevier, on the 20th of March, 1866, to re *139 linquish to them his right to the laud on payment of his money bid for it, and interest. Sevier did relinquish his rights acquired under the sale, and directed the sheriff to make a deed to the widow and heirs of Samuel Humbard, naming them, which the sheriff or his successor did on the 23d of March, 1866. Respondents insist that said relinquishment was not procured for the purpose of preventing the administrator from exercising his rights, nor to defraud creditors of land, nor was the money paid out of the estate for said land, but that they were advised they could thus purchase and hold said property, the court, as they say, having decreed that their father could not hold it under the agreement. This last statement is not accurate, however, but is not important at present.
Hone of the proceedings in the causes referred to are found in this record, but the sheriff’s deed is-filed, from which it appears that Milligan, as administrator of Samuel Humbard, recovered the judgment for costs against the respondents, including the widow,, as heirs of Samuel Humbard, deceased', and that this land was sold under this execution, and purchased by Sevier.
The question presented is, whether the land, under these circumstances, can be sold for payment of the-debts of Samuel Humbard. The case being heard on bill and answer alone, the sheriff’s deed being an exhibit to the answer, we must take the answer to be true for this issue.
The act of 1827, as carried into the Code, sec. 2267, under which this petition is filed, provides for *140 a sale of land when the deceased died seized and possessed of real estate. These words are not here used in their strict technical sense, but were intended to authorize the sale of- the real estate belonging to the deceased, and its appropriation to payment of his debt, whether he held it by an absolute legal title or not. Whatever estate the deceased had in real estate subject to appropriation to the payment of his debts in his life-time by legal process, whether execution or by other appropriate proceeding, may, under this section of the Code, be likewise appropriated after his death. When Samuel Humbard died, then, did he have any such estate in . this land, or any estate at all ? He was in possession of it under a contract that stipulated he should support his father and mother, and Aden, the father, had contracted to make him a title to the land. But on bill tiled by his heirs, this ■court dismissed the bill, thus settling, by adjudication, that he could not obtain a title to the land under the contract, but leaving him to his legal rights on. his covenant for a deed. He, then, was simply in possession of the land which the heirs of the vendor refused to convey, and which, under decree of this -court, they cannot be made to convey. We do not think this such a seizure and possession, or such ownership of the land as would authorize this court to sell the land for payment of debts. Such a sale would convey no title whatever to the purchaser, and would only change the possession. Under the peculiar facts of this case we do not think this ought to be done. We need not, in this view of the case, dis *141 cuss the other question arising on the effect of relinquishment of Sevier and conveyance by the sheriff.
Let the decree below be reversed and bill dismissed at complainant’s cost in this and court below.